IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DAWN ANGELA ICE,                )
                                )
    Plaintiff,                  )
                                )
v.                              )    Case No. CIV-17-0315-SM
                                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )
                                )
    Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Dawn Angela Ice (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Doc. 9, 13.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the state court records will refer to the original pagination.

I.   **Administrative determination.**

  A.   **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

  B.   **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

  C.   **Relevant findings.**

The Administrative Law Judge (ALJ) assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her

burden of proof. AR 9-21; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step analysis). Specifically, the ALJ found Plaintiff:

(1) was severely impaired, first, by major depressive disorder, and second by panic disorder without agoraphobia;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity (RFC)[2] to perform a full range of work at all exertional levels, with certain nonexertional limitations;

(4) could not perform any past relevant work;

(5) could perform jobs that exists in significant numbers in the national economy, namely: floor waxer, laundry laborer, window cleaner, laundry bagger, sorter, small part assembler, and lens inserter; so, she

(6) had not been under a disability, as defined in the Social Security Act, from April 1, 2011, through September 16, 2015.

AR 11-21.

### D. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review the ALJ's decision. *Id.* at 1-4. So, the ALJ's decision is the

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)). The ALJ's

4

decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

### B. Plaintiff's claims of error.

Plaintiff argues (1) "the ALJ misapplied the law and failed to support her findings by substantial evidence by failing to consider [her] shoulder impairment when assessing her [RFC]"; and (2) this error was not harmless. Doc. 18, at 11-13.

### C. Analysis.

Regarding her shoulder impairment, Plaintiff testified she typically received two-to-three injections for her rotator cuff tendinopathy a year, and "that helps." AR 62. She testified, "[w]hen it don't hurt, I work it." *Id.* at 63. She testified she could not pick up the microphone before her at the hearing, because if she lifts in a certain way "that pulls it . . . ." *Id.* When the arm is not hurting, Plaintiff would "still do whatever it is when it hurts that . . . I just don't want to believe it." *Id.*

After the ALJ gave a hypothetical to the vocational expert that included no exertional limitations but certain nonexertional limitations, the vocational

5

expert supplied two medium unskilled jobs, two light unskilled jobs, and two sedentary unskilled jobs that Plaintiff could perform. *Id*. at 74-75. The ALJ added to that hypothetical a limitation to light work with no climbing ladders, ropes, or scaffolds and no overhead work with the left extremity. *Id*. at 76. The vocational expert responded with the previously identified job of sorter, DOT 529.687-186, and two additional jobs: laminating machine offbearer, DOT 569.684-046, and fruit distributor, DOT 921.685-046. *Id*. at 75-77. When Plaintiff's counsel added to that hypothetical the individual can only occasionally reach objects far away with the left arm, the vocational expert replied that the identified three jobs (sorter, laminating machine offbearer, and fruit distributor) would all remain. *Id*. at 77-78.

An undated Disability Report listed depression, anxiety, falling ovaries, and dropping bladder as "all of the physical or mental conditions" "limit[ing] her ability to work." *Id*. at 241. A July 3, 2012 function report indicates Plaintiff's pain and "hurt[ing] all the time," but her complaints relate to hormones, pain when "walking and standing," and her "[e]motional rollercoaster." *Id*. at 248, 251, 253. A second Disability Report[3] indicates her "new physical or mental limitations" are difficulty completing tasks and her

---

[3] This report identifies the previous report as dated November 16, 2012. AR 276.

constant panic attacks. *Id.* at 276. She also indicated soreness all over from a car wreck. *Id.* Plaintiff makes no mention of her left shoulder in any of these documents.

Similarly, a July 31, 2012 consultative exam does not mention her shoulder pain and her physical exam indicated she is in no acute distress. *Id.* at 399-400. At that examination, her shoulder abduction, elevation, adduction, and rotation were all normal. *Id.* at 401.

As the Commissioner points out, the medical record's first mention of shoulder pain is April 17, 2013. *Id.* at 439; Doc 22, at 3. Plaintiff then reported the pain as chronic, dating back "at least ten years." AR 439. The ALJ's notation regarding Plaintiff's shoulder pain states: "The claimant obtained little treatment after she stopped going to Red Rock, meeting with Dr. [Matt] Haag six times since January 2014, mainly for acute shoulder pain. In March 2015, she obtained prescriptions for Celexa and Xanax from the doctor." *Id.* at 17 (citing *id.* at 729-34). During two March 2015 visits to Dr. Haag, under "Diagnosis," he noted "Depression," "Grief Reaction," "Anxiety," and "panic attacks." *Id.* at 729, 730. The previous four 2014 visits showed a chief complaint of shoulder pain and a related diagnosis. *Id.* at 731-34.

In assessing the RFC, the ALJ relied on treatment notes that "fail[ed] to support claimant's allegations of disabling pain and limitations." *Id.* at 19.

7

She also gave great weight to the consultative physician's opinion, which stated Plaintiff "has no severe physical impairment." *Id*. at 18. She considered Plaintiff's activities of daily living, noted some inaccurate information Plaintiff provided to the SSA, and discounted Plaintiff's credibility. *Id*. at 17. Plaintiff does not challenge these findings, nor does she point to *any* shoulder restrictions recommended in the medical record.

Plaintiff's reliance upon the mere diagnosis of a shoulder-related condition is misplaced because it is the resultant functional limitations arising from such a condition, if any, that must be used by the Commissioner to formulate Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can do despite your limitations."); § 416.945(a) (same). "Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) (citing *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988)). Plaintiff does not contend this impairment satisfies the criteria of a listed impairment and she fails to point to any functional limitation assessed by Dr. Haag. *See also Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (where a treating physician diagnosed a condition but did not opine on the functional limitations imposed by the condition and claimant does not allege the condition is of

listing-level severity, "the diagnos[i]s by [it]sel[f is] not significantly probative evidence the ALJ had to reject in order to find [the claimant] was not disabled, and therefore the ALJ did not need to discuss [it]"). The ALJ committed no legal error and substantial evidence supports the RFC.[4]

---

[4] Undoubtedly, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008). Even if the Court were to agree that the ALJ failed to properly discuss the medical evidence regarding Plaintiff's shoulder limitations, any error would be harmless.

As noted, Plaintiff testified about her shoulder pain. The ALJ included restrictions regarding Plaintiff's shoulder capacity in her hypothetical, as did Plaintiff's attorney. And, with the inclusion of left-side overhead restrictions and occasional left-side reaching, the vocational expert identified three jobs Plaintiff could perform, one of which the ALJ included in her decision. AR 20, 75 (identifying sorter, with 290 jobs in Oklahoma and 39,000 nationally).

Thus, assuming arguendo the ALJ erred, any error was harmless because the identified sorter job exists in significant numbers in the national economy. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 550 (10th Cir. 2017) ("[W]hen considering whether a significant number of jobs exist, 'the relevant test is *either* jobs in the regional economy *or* jobs in the national economy.'") (quoting *Raymond v. Astrue*, 621 F.3d 1269, 1274-75 n.2 (10th Cir. 2009) (upholding ALJ's reliance on vocational expert testimony where, even assuming two of the three jobs relied upon by the ALJ were erroneous, substantial evidence showed claimant could do the third job, which existed in "significant number[s]" in the national economy). *see also* 42 U.S.C. § 423(d)(2)(A) (using the national economy as the benchmark but defining "'work which exists in the national economy'" to mean "work which exists in significant numbers either in the region where such individual lives or in several regions of the country"); 20 C.F.R. §§ 404.1566(c) & 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy."). "No reasonable administrative factfinder, following the

## III. Conclusion.

The court affirms the Commissioner's decision.

ENTERED this 4th day of January, 2018.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).